We're now going to move to appeal 23-1739, United States v. Darlene, Mr. Dreisdell is Fieste. Fieste, thank you very much, and we're going to begin with oral argument on behalf of the appellant from Mr. Dreisdell. Thank you. Thank you, Your Honor. May it please the Court, Tom Dreisdell on behalf of the appellant Darlene Fieste. Ms. Fieste suffers from severe mental illness. Nobody disputes that. Her mental illness has caused delusions that have resulted in her making various phone calls to local officials in the Bloomington, Illinois area for over two decades, none of which resulted in prosecution because they understood her mental illness. The question before this Court is whether the federal government can force unwanted medication on her solely for the purposes of bringing her to trial, because everybody agrees she's never going to be cured. Now, this inquiry is governed by the Supreme Court's decision in cell and its four factors. The two that I would like to focus on today are the government's diminished interest in prosecution and the district court's order that lacks the specificity that cell demands. So, looking to the governmental interest, we concede based on the test used that this is a serious offense, which looks only to the statutory maximum that she's facing, but that's not the end of the inquiry. We have to ask also whether that interest has been severely diminished by the time Ms. Fieste has already spent in custody and the high likelihood of civil commitment in this case. So, at this point, she was arrested in January, January 20th 2022, so basically 20 months in custody already, and for the purposes of this inquiry, she's facing a guideline range of 12 to 18 months in prison. The government... There's different courts of appeals have addressed the guideline calculation differently, and we have not specifically confronted how that factors in. Is that something that the court determines in determining the government or the government's interest, the first prong? Is that something that the court should look at in determining special circumstances to evaluate the importance of the government's interest, and does it really matter in the end? I think it's the latter, Your Honor. I think we look at it to evaluate the government's diminished interest in prosecution. These courts that have used it, Grigsby in the sixth, White in the fourth, Ruiz-Gaxiola in the ninth, they rightly recognize that the guideline range accounts for individualized circumstances. It says, this is what this individual defendant is likely going to be looking at. It's not just this, oh, you know, 47 years imprisonment that the statutory maximum says, which we all recognize she's not going to get. So it should be considered a specialized, a special circumstance that the court would look at to weigh the significance of the government's interest? To determine whether the government's interest has been severely diminished, even in light of the statutory maximum. And there's been some discussion here about guideline ranges, but what is undisputed is the government, not Ms. Feastay, the government proposed 12 to 18 months in the district court. They invited us to rely on it, they relied on it, and the district court relied on it. Everybody relied on it. So any arguments that it should be something different or that it's not the appropriate measure, those have all been waived. That is what the district court to judge its interest by. And against 12 to 18 months, she's been in for 20. She's facing time served. So that's kind of prong one of the diminished interest. And when we look to prong two, civil commitment, yes, we focus primarily on her time served when we made our argument in the district court. But everybody recognizes civil commitment was the next step. The government told the district court, that's what we're going to do if you don't medicate her under cell. On the civil commitment issue, there really isn't much in the record on that. Whether or not she's likely to be civil committed, there really isn't much for the court to weigh. So how should we address that? And whose burden was it to come forward with that before the court? There's plenty in the record to show a likelihood of civil commitment. We have two doctors, her own doctor, actually, saying this particular individual cannot be released without being medicated. And that's what really distinguishes every case the government cites. Isn't that going too far though, Mr. Drysdale? Because weren't the doctors asked, they said they were not asked to opine on civil commitment. They were not asked to opine on dangerousness for the purpose of civil commitment. I do agree with that. But they absolutely did both give the opinion that releasing her into society without medication is not appropriate. And that's at the transfer. Is that the standard for civil commitment? The standard for civil commitment is dangerousness. Right. But what we don't have to show an absolute certainty of civil commitment, which is what the government seems to suggest. We just have to show a high likelihood. And the district court also has to weigh that factor. So you agree you have to show that. Correct. You agree that the burden is on the defendant to establish a likelihood or high likelihood of civil commitment in order to diminish the government's interest. I do. But I also agree that if you look at this court's opinion in Benedetto, the district court is required to consider this factor even if we focused on time in custody. But it still has to be... That's okay. Did Judge Shadid do that? No. At all. Not at all. Was he asked to or was it raised before him? I understand that what we said in Benedetto that a court has to. But if it's not something you're arguing or not something where there's evidence saying she will be civilly committed or there's a high likelihood, what burden is on the court to address it? There's certainly the government coming forth and saying this is the next step if you pass on cell. And then there's this evidence of two doctors saying that she needs to be medicated. There's Dr. Sini, the government's expert, who said I personally believe she's capable of carrying out her threats. Now that's not she's dangerous and going to be civil committed, but it's more evidence in light of the government saying look judge this is literally what we are going to do. So your position is it did it did come up. The parties did. It did. It was there. The government specifically said we are going to take this step. That's in the transcripts for the cell hearing. But you did not, you being the defense counsel, did not argue to the district court that there's a special circumstance of her likelihood of civil commitment that should diminish the government's interest as you're arguing now. We focused our inquiry on. I think it was even more than that. You didn't raise this other issue as potentially diminishing. It wasn't specifically in our pleadings. So that's the question. If you didn't ask the court to what obligation is there on the court to address the argument. And again I would return to DiBenedetto and I would go back to Sell which specifically says the district court is indeed obligated to take these circumstances into account particularly when the district court was clearly aware that this was what the government was going to do. Do you have any examples of a waiver situation where a court has concluded that a party didn't raise it whether or not that's actually true or not and that functions as sort of a waiver such that the district court does not have to abide by its obligation in Sell and DiBenedetto to discuss the likelihood of civil commitment? I don't have an example of that, your honor. I think that DiBenedetto basically answers that question. If it's in the record and it was broached, that's the word DiBenedetto uses. Broached. And if it was broached and it's in the record, the district court has to address it and the court recognized that in its order it recognized these are the three things that I have to take into account and then didn't. Before we lose the thread on dosage, any psychotropic medication of this nature is going to be medically administered. It's not going to be self-administered. Correct. Does the district court order have to get to the level of detail of saying what the dosage is or can it just be medical administration of Haldol and that's all it's necessary? I think every single court who has addressed this issue has been very clear that at bare minimum we need a range. We need a range something like 20 to 40 milligrams. It can't be what the district court wrote, which is any medication Dr. Cini wants at any dosage. That's what the district court has authorized here. I understand there was testimony about prolixin at the hearing, but that's not what the district court limited it to. There is zero testimony at the cell hearing about an appropriate dosage. There is no treatment plan prevented at the cell hearing about dosage. Let's put ourselves in the district court's position though. Judge Shadid is not a medical doctor. Correct. He's going to rely on the submissions from the parties. The government says this is what the order should say. Defense doesn't object. He enters the order. How can he do an independent review with regard to dosage? Well I disagree that we didn't object. We objected to any cell order and that included a governmental order that we didn't ask for. I should have been more specific. A cell order with regard to the dosage. Correct. And the problem is he can't enter that order. He couldn't because the government failed in its burden at the testimony. This is the government's burden by clearing convincing evidence on every cell factor. There is no question to Dr. Sini who is the only person who has the authority and the expertise to testify about dosage as what dosage or dosage range are you going to administer. The reason Judge Shadid couldn't do it is because the government failed to carry its burden at the cell hearing. Mr. Drysdale, if we agree with you on that and think something should be included in the order about the medication, to pick up on what Judge Brennan was asking, judges are not doctors and certainly medical situations especially with mental health can be very fluid. What's the correct guidance that district court should have in terms of entering something specific enough but not tying the hands of the medical professionals who are treating and in a much better position than a court to make that determination? I do see my time is up, Your Honor, if I may. You may. Okay. I think in this case the government is really stuck here because it's there's zero testimony. I understand your argument but if we're gonna if we agree with you and it needs further clarification, what's the guidance we should give that walks that line of we should give this dosage especially given if it were one time one and done that would be one thing but it's gonna take a period of time and we want the medical professionals to have the flexibility that they need to properly treat the patient. And I think that's where the opinion from all of the other circuits that come in that say look you don't have to pin down a dose just give a range. Ask your doctors what an appropriate medical range is. Maybe that I'm not a doctor but then the doctor can say okay what I'm going to do is I'm going to start with 20 milligrams. It doesn't work. I will try 25 and 30 and 35 and 40 and that gives the doctor the trial and error type of process that Dr. Cini testified to in this case to adjust the medications to see if it's going to work. But what can't happen is the government just failing in its obligation on dosage and then asking this court to come in and put 25 milligrams into the order based on a year-old order of something she got previously. Thank you Mr. Dreiselt. We will give you some rebuttal time. Thank you. Mr. Keenstra we'll recognize you now on behalf of the government. May it please the court. Good morning your honors. Jeff Keenstra on behalf of the United States. The defendant waived objection as to the dose range and civil commitment and the district court correctly held that important government interests are at stake in this case given the seriousness of the charges even considering any special circumstances. And I'll pick up where we left off with the dose range and the first issue is that the defendant waived objection. The district court specifically asked the parties during the hearing at a time where more specific testimony could have been developed exactly what the parties were asking the court to determine with respect to the treatment. And defense counsel told the court or agreed that the parties were quote not asking in the court to determine dosages and things of that nature. That's an affirmative agreement to the district court that the defendant was not seeking such a limit and so in doing so the defendant waived her arguments on appeal that the district court. That exchange seems to me ambiguous at best because it is true as Mr. Dreiselt just pointed out Ms. Feistay was objecting to the entry of any order whatsoever. So she certainly was opposed to a government drafted proposed order that the court hadn't asked for. The government just took it upon itself to supply to the court. She objected to the entire thing. She didn't want to be involuntarily medicated. Further in that exchange the court is saying you don't want me the court to get involved with you know figuring out what dose is going to be and both parties say yes for the very reason we've been discussing just now judges aren't doctors. That testimony needed to come from Dr. Sini. Why is that not a fair reading of that exchange? For a number of reasons I think. The first is that the district court was expressly asking the parties what it was at what the parties were asking it to determine. So if the defendant's position was that the court needed didn't have to specify a particular treatment but it did need to specify at least a dose range that could have been the response to the to the court. But that wasn't their position. They didn't want an order at all. And so on that broad position a general a generic objection to a cell order in general doesn't preserve every argument under the sun that could be made to the entry of such an order. And as that's a very good point that the government did provide a proposed order but that cuts the exact opposite direction because that shows that the defendant had word for word notice of exactly what the government wanted the district court to order and yet with that notice the defendant said nothing in response about the dose range. They didn't say at that point when they knew word for word verbatim what the government was requesting they didn't say that no actually your honor needs to include the dose. Now let me ask you the same question I asked Mr. Drysdale. Do you have a case an example of the waiver that you're suggesting where a court we have said or another circuit has said you know a district court doesn't have to make these required cell findings or doesn't have to do what we said in DiVenditto which is you know address civil commitment etc. Do you have examples of that? Yes first it's well established among the courts of the field that cell orders are subject to forfeiture cases like Cruz and others. Cruz in terms of waiver specifically said that objections to cell orders invites consideration of traditional notions of issue preservation forfeiture and waiver. So Cruz eventually applied forfeiture because there was not a waiver there but it said that the traditional notions of issue preservation apply equally to cell orders. As to medication I would note that this court has it has enforced waiver against supervised release conditions that ordered a defendant to take whatever medication was prescribed to them by their treatment provider. Beyond that as to DiVenditto the the issue was raised there by the press the point so forcefully that the district court in fact thought that the defense counsel was seeking civil commitment. So it's DiVenditto it was not just stating in a categorical rule that in every case a district court must raise civil commitment even if a defendant doesn't. Defense counsel here concedes that the defendant in fact has the burden of raising that issue and in DiVenditto it was raised to the district court. The defendant the defendant themselves raised the issue of civil commitment. Here the defendant took the exact opposite track. On the dosage issue for your waiver argument you are relying on an exchange during Dr. Opaso's testimony and if I read it correctly his testimony the discussion wasn't about a treatment plan and he was a psychologist who couldn't have opined on medication and dosages anyway wouldn't have been qualified to but there was no such exchange when the two psychiatrists testified. So how should that impact our waiver analysis? So I don't think it does cut against the government's waiver arguments. Dr. Opaso was the first of the three experts to testify and the district court was So when the testimony began and also during the testimony about basically what are we doing here what are the disputes between the parties what findings are you asking me to make and so this particular question did come up during Opaso's testimony but given how clear the parties were and they expressed agreement on this issue that they weren't seeking the district court to determine dose ranges. I'm not sure the defendant agrees with that. And I rely on the transcript. The transcript says we quote the parties are not asking the court to determine dosages and things of that nature. The defense counsel's response is correct. As to the issue about waiver I'd add that waiver is a rule of general application. The Third Circuit and Cruz said that it applies equally to to sell orders as in any other context and I think it's important to add as well that enforcing a waiver here does not leave the defendant without recourse. The district court's order expressly held open the opportunity for any party at any time to seek a modification. So if the defendant or experts come to believe that a particular limit is necessary in order to ensure that the treatment remains appropriate they're free to go right back to the district court and ask the district court to make that inquiry. But I think the concern behind that is and the reasoning behind the court putting a range in is to protect the defendant that the doctors that they want to keep them to protect the defendant to make sure she's not over medicated or they don't do something different than what they've represented to the court. I think that that is part of the concern as this court noted in Breedlove the circuits that have asked for more it's typically been a quite an issue where there simply wasn't enough in the record for the district court to even make the findings that sell two through four does so second through fourth factors that's not really the issue here. As to protecting the defendant as soon as this court would affirm if it were to do that the defendant could come back and ask the district court to set a limit. I imagine that the experts could get their heads together and do that but really enforcing a waiver just ensures that the litigation proceeds in an orderly process that just as with conditions of supervised release for example that the defendant presents their claim in the first instance to the appropriate decision maker before asking this court to weigh in on it. As to I guess there are a number of issues to with civil commitment the defendant has conceded this morning that the defendant does have the burden the defendant never raised it in the district court and in fact it's a more fundamental problem because the defendant didn't just not raise it at every opportunity she argued that she was not dangerous at all. This this morning my my friend on the other side's first comment was that she's been making threats for decades and yet as she argued in her briefing below the authorities have never civilly committed her never deemed her dangerous. This was a repeated insistent thread that the defendant made in the briefing below and in arguing that she was not dangerous at all she has waived any arguments on appeal that she is so dangerous as to be likely civilly committed. Beyond that really the record here is uncertain. I add that the defendant misstates the testimony in asserting that multiple experts or both experts have opined that she cannot be released without medication. In each instance she cites in the same experts testimony Dr. Byrne so it's really just one expert not multiple experts and as your honors have recognized this morning the testimony was not that she would be dangerous if released without medication it was that from a clinical standpoint she should be medicated even if that requires an order to do so. Beyond that there are no expert opinions on dangerousness or civil commitments and so at best we have an uncertain possibility. So how do we factor in the other special circumstance here that really was the focus? I'm troubled that the guideline range is 12 to 18 months here and she's already served roughly 20 months. If we affirm the cell order it's going to take at least four months maybe more to see if she can become competent to stand trial. Then to get the trial scheduled there'll be more delay. By the time she goes to trial we're probably talking about another at best nine months maybe more. That's troubling because then she's going to be serving time at twice what the high end of the guideline range is. How do we factor that in to the analysis here? Sure so I think we start at the step one that my friend on the other side conceded which is that the government interests here are very strong and as Sel emphasized a special circumstance like pretrial detention is not a substitute for it for prosecution. It may lessen the extent of those interests but when we have such a strong starting point here even when that those interests are lessened interests that remain are still important. You've distilled your interest to a firearm prohibition and supervised release. Well it's not quite that limited. As we argued and as Sel acknowledged first there's an inherently strong government interest in prosecuting serious offenses. That doesn't go away when a defendant reaches a sentence of time served. We identified a number of other interests that don't depend on the defendant receiving a sentence that extends beyond the date of sentencing. That includes protecting individual security given that these are threats of violence against people, protecting the government, the government itself and government officials, protecting the government's integrity and protecting public trust in government to show that the government will not be influenced and will not be deterred in carrying out its duties by threats of violence of these sorts. There's a very strong general deterrent effect. As to this particular defendant there are important interests in terms of supervised release which would protect the public and as rehabilitation both through the monitoring that supervised release allows as well as that it would allow the probation office to ensure that the defendant is receiving appropriate mental health treatment and services which could include medication. The supervised release as I just mentioned and the firearm are part of that but these are broad interests that and the government has at the outset a very strong interest in prosecuting these sorts of offenses that target the government itself. I see I'm way over time so. Thank You Mr. Keenstrow. Mr. Drysdale will give you three minutes on rebuttal. I'm gonna go ahead and just read from the transcript on this waiver issue. Judge Shadid said I guess what I'm asking though is if I find that she should be involuntarily medicated then are you guys asking me to decide based upon what I hear what the course of treatment should be or once I've made that decision that course of treatment is going to belong to the experts correct? Mr. McMire correct your honor we're not asking the court to determine dosages and things of that nature. Ms. Douglas defense counsel correct. That's clearly an exchange where the district court is saying look am I going to be a doctor here or am all I doing is making a determination that she should be When Dr. Seeney testified your honor the only expert in this case who by everybody's admission could say here's what the medication dosage is. But isn't that happening isn't that exchange you just read happening after that? No it's not it's before and so the government should have when Dr. Seeney came up said okay you want to administer prolixin what dosage or what dosage range how much for how long is it just prolixin instead we have an order that just lets Dr. Seeney basically do whatever she wants. What about the other psychiatrists why couldn't that doctor have opined? Because Dr. Opesso himself said look I don't do meds I can't do meds I'm just a psychologist. There was another psychiatrist who testified. Our psychiatrist did but it's it's not our burden to come forth with the medication dosage so and I think I'm offended by the notion that you can waive your right in general to a safe medication dosage that can't be the law that can't be sell that can't be due process so the government has to comply with that burden and you know the government has said a lot about waiver this morning but you know let's let's enforce waiver then on 12 to 18 month guideline range of which so we have all this discussion about civil commitment but we don't even really need to get there because as Judge St. Eve rightfully pointed out the government is seeking a sentence that's Mr. Dreiser I don't think that's fair we don't waive our way into sentences. Well your honor I think it is fair I think when the government comes and they say judge our interest by a 12 to 18 month guideline range I think it's very fair for the government to invite the district court to do that and for everyone to look and say okay against that guideline range the government's interest is severely diminished in this case. Judge Shadid reserves the right to absolutely does but that is a separate question as to whether the government's interest has been severely diminished for the purposes of injecting Ms. Fiste against her will. Thank you your honors. The case will be taken our advisement thank you to Mr. Keenstra thank you to Mr. Greisdale.